# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MAZEN EISSA,

    *Plaintiff*,

vs.

AETNA LIFE INSURANCE COMPANY,

    *Defendant.*

Case No. 09-1268-EFM

## MEMORANDUM AND ORDER

In this action brought pursuant to the Employee Retirement Income Security Act ("ERISA"),[1] Plaintiff Mazen Eissa claims that Defendant Aetna Life Insurance Company ("Aetna") wrongfully denied him long term disability payments by from October 22, 2008 to present. Eissa was employed by the Boeing Company ("Boeing"), where he was a participant in Boeing's Long Term Disability Plan ("Plan"). Aetna is the insurer of Boeing's Group Long Term Disability Insurance Policy, and is also claims administrator for the Plan. Aetna is also identified as a service representative under the Plan. On or about May 6, 2005, Eissa alleges that he became disabled and eligible for benefits under the Plan and claims that he has continuously remained disabled and eligible for benefits from that date to present.

By letter dated September 30, 2005, Aetna notified Eissa that it was reviewing his short-term disability claim to determine his eligibility for long term disability benefits. In doing so, Aetna

---

[1] 29 U.S.C. § 1001 *et seq.*

informed him that unless he signed an returned Aetna's Reimbursement Agreement, it would estimate other income benefits, including Social Security Disability payment, in calculating his total monthly benefit amount. Thereafter, on November 9, 2005, Aetna notified Eissa that after completing its review, it determined that he was totally disabled under the terms of the Plan, and advised him as to the requirements for maintaining his benefits after November 4, 2007. On November 28, 2005, Aetna received Eissa's executed Reimbursement Agreement. Aetna then informed Eissa that based on the Reimbursement Agreement, Aetna would no longer deduct other income benefits, including Social Security Disability income, from his monthly benefit amount. As a result, Aetna sent Eissa a check for prior under-payments based on those estimates. Eissa received his monthly payments until November 4, 2007 when Aetna terminated his benefits. Eissa administratively appealed this decision, after which Aetna reinstated his long term disability benefits through October 21, 2008.[2]

On November 11, 2007, the Social Security Administration ("SSA") notified Eissa that he was entitled to a Social Security Disabiltiy Income Benefit ("SSDI"), effective immediately and was retroactive to July 2005. Eissa received a past due SSDI benefits check for $35,571, and commencing November 2007, he received monthly SSDI benefits in the amount of $1,437. On March 10, 2008, Aetna notified Eissa by letter that it had learned of his SSDI payments, and pursuant to the Plan, Aetna was required to reduce his monthly benefit by the amount of his SSDI benefit. Aetna further requested that Eissa reimburse Aetna $39,500.08, the amount of the

---

[2]Aetna notified Eissa by letter dated April 28, 2008 that his disability payments under the Plan were reinstated effective November 4, 2007, but reduced his monthly benefit amount from that date forward due to the Social Security Disability Income Benefit income he was currently receiving.

overpayment. Eissa filed for bankruptcy eight days later on March 18, 2008.[3] The United States Bankruptcy Court for the District of Kansas discharged Eissa's bankruptcy case on July 30, 2008. Aetna terminated Eissa's disability benefits under the Plan on October 22, 2008.

After Eissa filed this action, Aetna, in its First Amended Answer, asserted recoupment as an affirmative defense. Aetna contends that if it is ultimately determined that Eissa is entitled to benefits for the period in question, it is entitled to recoup the overpayment that remains outstanding. Now before the Court is Eissa's Motion for Partial Summary Judgment in which he asks the Court to determine whether Aetna is entitled to offset Eissa's future benefit payments based on the overpayment when, as Eissa claims, that overpayment was discharged in bankruptcy. Aetna moves the Court in its Cross-Motion for Partial Summary Judgment to determine whether it has the right to recoup its overpayment of long term disability payments to Eissa, notwithstanding his bankruptcy discharge.

## I. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5] A fact is "material" if, under the applicable substantive law, it is "essential

---

[3] As part of his Petition, Eissa identified Aetna as a creditor holding an unsecured nonpriority claim.

[4] Fed. R. Civ. P. 56(c).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

to the proper disposition of the claim.[6]  In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[7]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[8]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[9]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[10]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[11]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[12]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[6]*Id.*

[7]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[10]*Celotex*, 477 U.S. at 323.

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[12]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II. Analysis

Eissa argues that because the overpayment he received from Aetna was discharged through his bankruptcy proceeding, Aetna's attempt to recoup its overpayment is outside any authority of either the Plan or statute. Rather than addressing Aetna's claim under the recoupment doctrine, Eissa argues setoff under bankruptcy law. In doing so, Eissa appears to concede that Aetna is entitled to setoff the amount of the disability benefit payments which were due Eissa pre-bankruptcy, but argues that Aetna is not entitled to offset any benefit payments which are due him post-bankruptcy. Aetna disagrees, arguing that unlike the setoff rule in bankruptcy, recoupment arises where the debts arise out of a single transaction. Aetna contends that because Aetna's obligation to pay Eissa disability benefits and Eissa's obligation to repay Aetna arise from the same transaction, such overpayment is subject to recoupment, and is not subject to discharge through bankruptcy.

A setoff under the Bankruptcy Code is usually asserted for the purpose of reducing or extinguishing a mutual debt arising from different transactions.[14] Both debts must have arisen before the bankruptcy action commenced and must be mutual.[15] Setoff is allowed in only very narrow circumstances and is subject to the automatic stay.[16] While recoupment is similar to setoff, it is a separate, equitable doctrine that is not subject to the discharge provisions of the Bankruptcy Code.[17] The recoupment doctrine may be asserted where the obligation to repay arose from the "same

---

[14] 11 U.S.C. § 553; *Bram v. Aetna Life Ins. Co.*, 179 B.R. 824, 826 (E.D. Tex. 1995).

[15] 11 U.S.C. § 533(a); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990).

[16] *Chase Cnty. Gas Serv. Co., Inc. v. Williams Natural Gas Co.*, 1997 WL 57151, at *2 n.5 (10th Cir. Feb. 12, 1997) (citing *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 157 (10th Cir. 1986)).

[17] *See Bram*, 179 B.R. at 827; *see also In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990) ("The common law doctrine of recoupment, while frequently merged with the doctrine of setoff in other contexts, is a distinct doctrine in bankruptcy cases.") (citing *In re B & L Oil Co.*, 782 F.2d at 157).

transaction" as the claim for disability benefits.[18] For purposes of recoupment, "same transaction" is a term of art that must be narrowly defined.[19] Thus, for a claim to arise from the "same transaction" for purposes of recoupment, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."[20] "The distinction between a setoff and recoupment is very important in bankruptcy because the Bankruptcy Code places strict limitations on the ability of a creditor to setoff mutual debt it owes to the debtors while not specifically addressing recoupment."[21]

The key issue for this Court is to determine whether Eissa's debt obligation alleged owed to Aetna and the overpayment Aetna made to Eissa arose from the same transaction. Generally, courts apply a fact-based approach in making this determination, from which "the predominate consideration, given the equitable nature of the recoupment doctrine, is whether it would be fair for the debtors to enjoy the benefits of the transaction without also meeting its obligations."[22] Here, Eissa received short-term disability payments from May 6, 2005 to November 4, 2005, after which he began receiving long term disability benefits under the Plan until October 21, 2008, when said benefits were terminated. Eissa argues that the monthly benefit payments he received involved more than one transaction because prior to making each payment, Aetna made the decision that Eissa

---

[18]*Beaumont v. Dept. of Veteran Affairs (In re Beaumont)*, 586 F.3d 776, 781 (10th Cir. 2009).

[19]*Peterson Distrib., Inc. v. Styler (In re Peterson Distrib.)*, 82 F.3d 956, 960 (10th Cir. 1996).

[20]*Id.* (quoting *In re Peterson Distrib.*, 82 F.3d 956, 960 (10th Cir. 1996)); *see also United Structures v. G.R.G. Eng'g*, 9 F.3d 996, 998 (1st Cir. 1993) (" 'setoff involves mutual debts arising from unrelated transactions and recoupment covers reciprocal obligations arising out of the same transaction ' ") (quoting 1 David G. Epstein *et al.*, Bankruptcy § 6-45, at 703 (1992)).

[21]*In re Sigman*, 270 B.R. 858, 860 (S.D. Ohio 2001) (citing *In re B&L Oil Co.*, 782 F.2d at 157).

[22]*Id.* at 861.

continued to be disabled under the Plan's terms. Eissa contends that for each of these decisions, a new transaction occurred, and as a result, the recoupment doctrine is inapplicable. This argument, however, is unpersuasive.

Eissa's disability payments were the result of his injury that occurred in May 2005, and all benefit payments he received were pursuant to the terms of the Plan. After Aetna made the initial eligibility determination, the subsequent decisions were simply a review of Eissa's claim to determine whether his current benefit payments would continue as a result of that initial decision under the Plan's terms and were not, as Eissa suggests, separate and distinct claims to which benefit eligibility was determined. Thus, we find that the monthly benefit payments made to Eissa were the result of a single transaction.

Having found that the monthly benefits Eissa received were the result of a single transaction, we next determine whether those payments and Eissa's obligation to repay constitute a single transaction for purposes of recoupment. There are two different agreements involved in this case. The first is the Plan, which is a contract between Aetna and Boeing, Eissa's employer. The Plan provides Eissa with his long term disability coverage and is what requires Aetna to pay Eissa benefits for as long as he remains eligible. The second agreement is the Reimbursement Agreement, which is between Aetna and Eissa.[23] The Reimbursement Agreement is Eissa's promise to

---

[23]Eissa contends that the Reimbursement Agreement is invalid due to lack of consideration. He argues that he was required to sign the agreement in order to receive his monthly disability benefit payments, payments that Aetna was already required to pay him under the Plan. The Plan provides that a monthly benefit payment will be reduced by "[c]ertain other income benefits that you are entitled to receive," which includes Social Security income benefits. Doc. 23-3, pp. 19-20. Aetna initially estimated the amount of Social Security Disability Eissa appeared eligible under the Plan's terms, and reduced his monthly benefit payment accordingly. The Reimbursement Agreement provides that "in consideration of the payment of [Long Term Disability] benefits without reduction on account of other benefit payments to which I . . . may become entitled under the United States Social Security Act . . . , I hereby agree to reimburse Aetna for any and all overpayments made to me under the [Long Term Disability] policy . . . ." Doc. 23-8, p. 2. Thus, in exchange for Aetna's agreement to forego reducing Eissa's monthly benefit amount as permitted by the Plan, Eissa agreed to repay Aetna for any overpayment made to him under the Plan. We therefore conclude there was adequate consideration to find this agreement enforceable. Accordingly, Eissa's argument is without merit.

reimburse Aetna for any overpayment made to him under the Plan. Thus, Aetna's obligation to pay Eissa his monthly disability payment and Eissa's obligation to reimburse Aetna is dependant on the other – Eissa's promise to repay any overpayment resulted in his receiving monthly benefit payments from Aetna without reduction for his estimated SSDI benefits. We therefore conclude that Aetna's obligation to pay monthly benefit payments and the overpayment arise out of a single, integrated transaction. As a result, Aetna is entitled to recoup the overpayment made to Eissa should it succeed in this case. Accordingly, Aetna's Motion for Partial Summary Judgment is granted, and Eissa's Partial Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 13) is hereby DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 25) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 30th day of November, 2010.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE