# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|                                     |   |              |
|-------------------------------------|---|--------------|
| MAZEN EISSA,                        | ) |              |
|                   Plaintiff,        | ) | **CIVIL ACTION** |
| v.                                  | ) | No. 09-1268-MLB |
| AETNA LIFE INSURANCE COMPANY,       | ) |              |
|                   Defendant.        | ) |              |

## MEMORANDUM AND ORDER

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. ERISA governs employee benefit plans. 29 U.S.C. § 1003. Plaintiff brings his claim under 29 U.S.C. § 1132(a)(1)(B), "to recover benefits due to [a plan participant] under the terms of his plan, to enforce [a plan participant's] rights under the terms of the plan, or to clarify [a plan participant's] rights to future benefits under the terms of the plan."

This case now comes before the court on cross-motions for summary judgment. (Docs. 36, 40). The motions have been fully briefed and are ripe for decision. (Docs. 37, 41, 44, 45, 48, 49). Defendant's motion is granted and plaintiff's motion is denied for the reasons herein.

**I.    Summary Judgment Standards**

Where, as here, the parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that cited by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to

material facts. James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997) (citing Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981)). The few disputes referred to in the parties' submissions, for the most part, relate to matters of completeness and interpretation. The court is satisfied that there are no genuine disputed issues of material fact.

## II. Standard of ERISA Review

The parties agree that the Plan provides for discretionary authority to the Plan administrator and that the arbitrary and capricious/abuse of discretion standard applies. The Tenth Circuit commented on this standard in Loughray v. Hartford Group Life Ins. Co., No. 07-1189, 2010 WL 618032 (10th Cir. Feb. 23, 2010), a case heavily relied upon by plaintiff:

> In the ERISA context, we treat the abuse of discretion and the arbitrary and capricious standards of review as interchangeable. Under the abuse of discretion standard, we uphold an administrator's decision so long as it is predicated on a reasoned basis. There is no requirement that the basis relied upon be the only logical one or even the superlative one. Thus, we ask only whether the administrator's decision resides somewhere on a continuum of reasonableness-even if on the low end.
>
> In cases such as this one, where the same entity serves as the administrator and payor, an inherent, dual-role conflict of interest exists. The existence of a dual-role conflict does not alter the standard of review, but we weigh the conflict as one of many case-specific factors in determining whether the administrator's decision was an abuse of discretion.

(Internal citation and quotations omitted.)

## III. Facts

Plaintiff was employed by The Boeing Company ("Boeing") as an engineer and was a participant in The Boeing Long Term Disability Plan

("the Plan"). Aetna was the service representative of the Plan and had complete authority to review all denied claims for benefits. The Plan pays benefits for two kinds of disability: (1) disability relating to the employee's "own occupation" at Boeing and (2) disability preventing the employee from working at "any reasonable occupation." After the first 24 months of "own occupation" disability, to be "totally disabled" the employee's disability must prevent the employee from working at any reasonable occupation for which he or she may be fitted by training, education, or experience. There is no claim that plaintiff did not receive all the "own occupation" benefits to which he was entitled under the Plan. Rather, the disputed issues relate to Aetna's denial of "any reasonable occupation" disability. Nevertheless, it is instructive to summarize the facts from the beginning of plaintiff's application for benefits.

Plaintiff initially claimed to be totally disabled as of May 6, 2005 due to depression, irritable bowel syndrome (IBS), colitis, and upper back/neck pain. He received disability benefits starting May 13, 2005 due to recurrent major depressive disorder and posttraumatic stress disorder. Plaintiff's treating physicians at this time were doctors Galvan and Knight.

On November 20, 2006, Aetna notified plaintiff of the upcoming change in the definition of disability from "own-occupation" to "any occupation." In a letter dated October 5, 2007, Aetna informed plaintiff that it determined his medical documentation did not support physical limitations and restrictions that would preclude him from performing his own sedentary level occupation and that his long-term benefits would be terminated after twenty-four months. Plaintiff's

attorney requested a review of the denial. On April 22, 2008, Aetna overturned its original decision and reinstated benefits retroactive to October 2007.

In October 2008, Aetna requested Dr. Stewart Shull to conduct a review of plaintiff's medical records. Dr. Shull also consulted with Dr. Galvan. After reviewing the records, Dr. Shull determined, "[t]he only accommodation necessary would be proximity to a restroom."

Aetna referred plaintiff's file to its vocational rehabilitation consultant, Elayne G. Goldman, in order to determine whether plaintiff had transferrable skills and whether there were any sedentary occupations he could perform given his education, experience, and training. In a report dated October 20, 2008, Goldman identified five sedentary level occupations that existed in plaintiff's area and afforded reasonable wages. Aetna informed plaintiff that it had determined that he was capable of working at a "reasonable occupation" and therefore was terminating his disability claim effective October 22, 2008. There is nothing in the record to indicate that as of the October 2008 decision, either Aetna or its consultants failed to consider all available information concerning plaintiff's situation.

Plaintiff appealed Aetna's denial of plaintiff's claim for long-term "any reasonable occupation" benefits and supplied additional information, none of which apparently had been furnished previously. This information Aetna included, among other items, medical records of Dr. Knight through March 2009, records of Dr. Galvan through April 2009 and a vocational report from a Karen Terrill dated May 2009. In

one way or another, all this information related to a 30-day[1] "bowel log" maintained by plaintiff which purported to show that, on average, he spent 91 minutes in the bathroom each day from 8 a.m. to 5 p.m. at unscheduled and unpredictable times because of his IBS. Ms. Terrill opined, on the basis of some, but not all, of the information, that plaintiff was disabled from working at "any reasonable occupation." (Apparently she did not review any information from Dr. Galvan.)

Aetna requested Timothy Craven, M.D., to conduct a review of plaintiff's physical condition in connection with plaintiff's appeal seeking continuation of disability benefits. Dr. Craven has a general certification in occupational medicine. Dr. Craven reviewed plaintiff's medical records from Drs. Galvan and Knight, plaintiff's bowel log, Ms. Terrill's report and numerous other records (Doc. 4 at 14-15). Dr. Craven did not dispute plaintiff's IBS diagnosis. Dr. Craven issued two reports. In the first he noted:

> He has been diagnosed with irritable bowel syndrome and neck pain, but he should be able to work in spite of those problems. He is under treatment and does have to use the bathroom frequently but should be able to do some job. He would need to be accommodated so he is close to a bathroom and be able to take short breaks to go to the bathroom but should be able to work in spite of these medical problems. His medical condition is not severe enough that would preclude him from performing the duties of any occupation.

Then, after reviewing an additional record of Dr. Galvan's, Dr. Craven issued a supplemental report:

> There was a statement from his treating doctor, a gastroenterologist named Dr. Alonso Galvan. It was a statement that he did on 4/29/09 and I reviewed the statement. He reiterated that he had treated Mr. Eissa in the past. He diagnosed him with irritable bowel

---

[1]February 1 to March 2, 2009.

>syndrome on or about 1/10/05. He noted that he had never seen a case of disability due to irritable bowel syndrome or a case that was resistant to most therapies. He felt he has been resistant but did not explain why he was resistant to therapy. He also said he reviewed the log that Mr. Eissa did as far as the number and length of time he spent in the bathroom. Dr. Galvan felt it was an inordinate amount of time spent in the bathroom and he was not aware he was doing that.
>
>After review of the statement from Dr. Galvan, it does not change my original opinion which I stated in my previous report.
>
>In summary, he has medical problems with irritable bowel and neck pain, but it [sic] failed to support a functional impairment for any occupation for the entire time frame. The time frame was 10/22/2008 to present.

By letter dated July 1, 2009, Aetna notified plaintiff that it had reviewed plaintiff's appeal and outlined the findings of its review. Aetna informed plaintiff it was upholding its original decision to terminate his "any reasonable occupation" disability benefits.

**IV.  Summary of Plaintiff's Claim**

The "primary issue" identified by plaintiff is whether it was arbitrary and capricious for Aetna to deny his claim for benefits based on Dr. Craven's opinion. (Doc. 37 at 15). He complains that "Dr. Craven is a medical expert without obvious vocational expertise, yet Aetna bases its denial on Dr. Craven's vocational opinion." (Id. at 23). Plaintiff also faults Aetna for relying on the vocational opinion from Goldman who, plaintiff postulates, ". . . likely would have reached a different conclusion if she had used the bowel symptoms corroborated by . . . . Drs. Knight and Goldman." (Id. at 21). Plaintiff conveniently overlooks the fact that the symptoms were not noted in Drs. Knight and Galvan's records until 2009, several months

-6-

after Goldman rendered her opinion.  The same applies to the bowel log.  In other words, Goldman did not fail to "use" the information because it was not in existence.  Plaintiff seems to suggest that Aetna acted arbitrarily and capriciously by not requesting Goldman to supplement her report based on this information.

Plaintiff cites three cases to support her argument that "Aetna's denial is not reasonable: (Doc. 37 at 28): <u>Loughray v. Hartford Group Life Ins.</u>, supra, <u>Hancock v. Metropolitan Life Ins. Co.</u>, 590 F.3d 1141 (10th Cir. 2009) and <u>Rasenack ex rel. Tribolet v. AIG Life Ins. Co.</u>, 585 F.3d 1311 (10th Cir. 2009).

Plaintiff's reliance on <u>Loughray</u> is somewhat puzzling.  The Tenth Circuit spent considerable time detailing the evidence of Loughray's alleged disability, finally concluding that Hartford had acted arbitrarily and capriciously in denying Loughray's disability claim, even when Hartford refused to accept some of Loughray's evidence:

> This decision by Hartford does not render Hartford's termination decision arbitrary and capricious. ERISA requires that a fiduciary "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Here, Hartford first terminated Loughray's benefits in January 2002, and as discussed above, with a reasonable basis for doing so. As permitted by ERISA, Loughray then sought a review of that decision, supplementing her request with additional medical information. Hartford granted Loughray an extension of time to gather material for her appeal before upholding its decision. Then, Hartford twice reopened the file to reconsider its decision and allow Loughray to supplement her file-once at her request and once at the request of a state agency. Both times Hartford affirmed its termination decision.

<u>Loughray</u>, 2010 WL 618032 *13.

Here, Aetna did not refuse to consider any of plaintiff's evidence. On the contrary, the record shows that Aetna gave plaintiff the "full and fair" review called for in the statute. The mere fact that Aetna did not approve plaintiff's claim based on his evidence does not compel the conclusion that its decision was "unreasonable" or arbitrary and capricious, much less that <u>Loughray</u> mandates such a result.

In <u>Hancock</u>, the Circuit found that <u>Metropolitan Life's</u> demand of accidental death benefits was not arbitrary and capricious:

> Having determined the proper standard of review, we turn to the second issue before us: whether Met Life's denial of Ms. Hancock's AD & D claim was arbitrary and capricious. "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." <u>Caldwell v. Life Ins. Co. of N. Am.</u>, 287 F.3d 1276, 1282 (10th Cir. 2002). To survive our review, Met Life's decision "need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis." <u>Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan</u>, 379 F.3d 1168, 1176 (10th Cir.2004) (internal quotation marks omitted).

590 F.3d at 1155.

Plaintiff distinguishes <u>Hancock</u> on the basis that Metropolitan Life "did not ignore claimant's evidence" (Doc. 37 at 32) whereas Aetna "ignored" the vocational report prepared by Terrill. Once again, the fact that Aetna did not go along with Terrill's opinion does not support the conclusion, or even an inference, that Aetna "ignored" it or that its ultimate denial was arbitrary and capricious.

Finally, plaintiff cites <u>Rasenack</u> for the proposition that Aetna breached its fiduciary duty by relying on the opinion of Dr. Craven.

-8-

The district court granted summary judgment to AIG but the Circuit, after another exhaustive review of the facts, found that AIG had failed to comply with its obligations in handling Rasenack's claim by not rendering "a final decision within [the temporal] limits prescribed by the Plan and ERISA." (585 F.3d at 1318) (internal quotations omitted). The court concluded that the proper standard of review of AIG's decision was de novo, not arbitrary and capricious as applied by the district court. The Circuit remanded the case for the proper de novo review.

Once again, the reason for plaintiff's reliance on Rasenack under the facts of this case is unclear. Plaintiff has conceded that the proper standard of review is arbitrary and capricious. To be sure, Rasenack cites the plan administrator's duty to conduct an investigation and to seek out the information necessary for a fair and accurate assessment of the claim. But there is no evidence which would support a conclusion that Aetna breached its duty or acted in an arbitrary and capricious manner by considering Dr. Craven's opinion or by not asking Goldman for a revised opinion.[2]

As for plaintiff's argument that Aetna's reliance on Dr. Craven's opinion was arbitrary and capricious because Dr. Craven has no "vocational expertise," the court first notes the absence of any authority that Dr. Craven was required to have such expertise in order for Aetna to rely on his opinion. Second, it is clear from reading

---

[2]There is nothing in the record to suggest that plaintiff ever requested Aetna to secure a revised opinion from Goldman. Whether he did, or did not, is not determinative. The court merely notes that plaintiff has postulated that Goldman "likely would have changed her opinion." This, of course, is pure speculation.

-9-

Dr. Cramer's evaluations as a whole that he was opining on plaintiff's disability status, something which he was qualified to do. Finally, it is noteworthy that neither of plaintiff's treating physicians expressed the opinion that plaintiff was disabled from working at any reasonable occupation. Indeed, plaintiff acknowledges that Dr. Galvan commented that "obviously it is not to his advantage to get well" (Doc. 48 at 13) which raises the possibility of malingering.

**V.    Conclusion**

Defendant's motion for summary judgment is granted (Doc. 40) and plaintiff's motion (Doc. 36) is denied. Defendant is entitled to the recoupment of its overpayment in the amount of $28,642.34.[3] Defendant's request for attorney fees is denied.[4]

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. Defendant may not move for reconsideration on the basis of arguments which could have been included in a reply. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this ___14th___ day of July 2011, at Wichita, Kansas.

---

[3] On November 30, 2010, the court held "Aetna is entitled to recoup the overpayment made to Eissa should it succeed in this case." (Doc. 34).

[4] Under 29 U.S.C.A. § 1132, the court may grant attorney fees in its discretion. Defendant provides no evidence as to why attorney fees would be proper in this case.

-10-

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE